FILED & JUDGMENT ENTERED
Christine F. Winchester

October 2 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **JOSEPH PERRY JOINER** ) | Chapter 11 Sub V |
| **KRISTA MARIE JOINER,** ) | Case No. 25-30396 |
| ) | |
| Debtors. ) | |
| ) | |

## ORDER OVERRULING THE DEBTORS' OBJECTION

This matter is before the Court on the Objection to Notice of Election by Pinnacle Bank for Application of 11 U.S.C. 1111(b)(2) filed by the Debtors on August 1, 2025 (the "Objection").

The Court held a hearing on the Objection on September 23, 2025 (the "Hearing"). John Woodman, attorney for the Debtors; Shelley K. Abel, the Bankruptcy Administrator; Melanie Raubach, the Subchapter V Trustee; and Andrew Irby, attorney for Pinnacle Bank appeared at the Hearing. The Court took the matter under advisement and now renders its opinion. For the reasons that follow, the Court overrules the Debtors' Objection and allows Pinnacle Bank's § 1111(b)(2) election.

1

## BACKGROUND

1. Joseph Perry Joiner (the "Male Debtor") and Krista Marie Joiner (the "Female Debtor") filed for bankruptcy relief on April 23, 2025 and elected to proceed under Subchapter V of the Bankruptcy Code.

2. On February 3, 2017, the Debtors purchased their family residence located at 12730 Duncourtney Lane, Charlotte, NC 28277 (the "Primary Residence").

3. Both Debtors owned businesses. The Male Debtor holds the sole interest in the Chasewater Industries, LLC, Chasewater Logistics, LLC, Chasewater Group, LLC, and AGOLS Holdings, LLC (collectively, the "Chasewater Entities").

4. On April 3, 2023, six years after the purchase of the Primary Residence, the Chasewater Entities obtained a $1,005,000 SBA loan from Pinnacle Bank ("Pinnacle") in order to fund an acquisition of certain assets that would allow for synergy between the various Chasewater Entities (the "Loan"). To secure the Loan, Pinnacle and the SBA required, among other agreements, an unconditional guarantee from both Debtors and a lien against the Primary Residence.

5. On June 26, 2025, Pinnacle filed a $1,238,803.18 proof of claim asserting a $463,768.00 secured claim and a $775,035.18 unsecured claim (the "Claim")[1]. Docket Number 21-1. In response to question nine ("Is all or part of the

---

[1] The Claim was based on an $805,000 appraisal of the Primary Residence dated October 14, 2024. Truist Bank has a first priority lien worth approximately $341,000, leaving Pinnacle with approximately $464,000 in equity based upon the 2024 appraisal. A hearing on the final valuation is forthcoming and thus these values are used for illustrative purposes only without prejudice to any party asserting a competing value of the Primary Residence.

2

claim secured?") Pinnacle indicates that the Claim is secured by real estate and a UCC. Attached to the proof of claim, among other things, is

- a Note between the Chasewater Entities and Pinnacle Bank dated April 3, 2025,

- an Unconditional Guaranty by the Male Debtor dated April 3, 2025,

- an Unconditional Guaranty by the Female Debtor dated April 3, 2025,

- a Security Agreement granting the Pinnacle a blanket lien on all assets of AGOLS Holdings, LLC dated April 3, 2025,

- a UCC Financing Statement dated March 28, 2023 and filed with the North Carolina Secretary of State, File No. 20230040098k,

- a Deed of Trust, Assignment of Leases and Rents and Security Agreement filed with the Mecklenburg County Register of Deeds, Book 38052, Page 870 granting Pinnacle a lien on the Primary Residence, and

- a Judgment dated January 24, 2025 entered in the Guilford County Superior Court (Case No. 24-CVS- 019639-400) against the Clearwater Entities and the Debtors in favor of Pinnacle based upon default of the Loan and requiring turnover of the collateral securing the Loan (the "Judgment")

6. On July 29, 2025, Pinnacle filed a Notice of Election by Pinnacle Bank for Application of 11 U.S.C. §1111(b)(2) (the "Election") seeking to have its entire Claim treated as secured pursuant to 11 U.S.C. § 1111(b)(2).[2]

7. On August 1, 2025, the Debtors filed the Objection alleging that Pinnacle may not make the § 1111(b) election because the Debtors decided to modify the Claim pursuant to § 1190(3), which takes precedence over § 1111(b). The Objection argues that "section 1111(b) is inapplicable in individual subchapter V cases as 1190(3) specifically permits modification of liens for extended periods of

---

[2] Subsequent statutory references in this order are to Title 11 unless otherwise indicated.

3

time similar to mortgages. To permit section 1111(b) elections in individual subchapter v cases would simply make section 1190(3) superfluous."

8.  On August 15, 2025, Pinnacle filed the Response to Debtors' Objection to Notice of Election by Pinnacle Bank for Application of 11 U.S.C. §1111(b)(2) ("Pinnacle's Response"). Pinnacle's Response explains that "§ 1190(3) does not override—or 'trump'—§ 1111(b), as Debtors suggest; rather, it simply acts to allow a debtor to treat a claim secured by a primary residence in real property similar to the other secured claims contemplated in §1123(b)(5)." It contends that "§ 1111(b) applies in all Chapter 11 cases, including Subchapter V." Pinnacle's Response at 2 (quoting In re VP Williams Trans, LLC, No. 20-10521, 2020 WL 5806507, at *6 (Bankr. S.D.N.Y. Sept. 29, 2020)). It also points out that § 1181(a) provides a specific list of general Chapter 11 provisions that do not apply in Subchapter V cases, and, notably, does not include § 1111.

9.  On September 16, 2025, the Debtors filed the Brief in Support of Debtors' 1190(3) Election (the "Debtors' Brief"). The Debtors' Brief focuses on the canons of statutory interpretation. It argues that § 1190(3) trumps any election afforded to Pinnacle under § 1111(b)(2) due to its clear and specific language. It points out that § 1190(3) is the only provision under the Bankruptcy Code that explicitly permits a debtor to modify a lien on a primary residence, and only if very specific requirements are met. It also argues that allowing Pinnacle to make an § 1111(b) election would ignore "the very rationale behind the Small Business Reorganization Act" which in part was "to aid small business owners by allowing

4

them to retain their residences" because it would "render 1190(3) superfluous."

10. At the Hearing, the attorney for Pinnacle also stated § 1190(3) might not even apply in the Debtors' case because of the word "only." He argued that pursuant to § 1190(3), a plan "may modify the rights of the holders of a claim secured **only** by a security interest in real property that is the principal residence of the debtor . . . ," and according to the proof of claim and the documents attached to the proof of claim, including but not limited to the Judgement referencing all the Loan collateral, it seemed as if the Loan was not only secured by the Primary Residence.

## DISCUSSION

11. At the Hearing, the parties primarily addressed whether a Subchapter V debtor's unique ability to modify a claim secured by their primary residence under § 1190(3) overrides a creditor's right to make the § 1111(b) election to have its entire claim treated as secured. The Court concludes that it does not.

12. As a general rule, Chapter 11 debtors cannot modify a claim secured only by a security interest in the debtor's primary residence. 8 COLLIER ON BANKRUPTCY ¶ 1190.02 (16th ed. 2024). Section 1123(b)(5) provides that a Chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." In other words, while a Chapter 11 plan cannot modify claims secured by the debtor's primary residence, it can modify claims secured by other types of collateral.

13. Another general rule that applies in all Chapter 11 cases is § 1111(b)(2)

5

which states that that "[i]f such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." § 1111(b)(2). It is well understood that notwithstanding the plan's ability to modify claims secured by other types of collateral under § 1123(b)(5), § 1111(b)(2) allows creditors who have a partially secured claim to elect to have their entire claim treated as secured. As explained in In re Pack,

> Under certain circumstances, the Code restricts the extent to which a chapter 11 debtor can modify lien rights under §§ 506 and 1123(b)(5). For example, partially undersecured creditors can make an election under § 1111(b) to force the debtor to treat the value of the undersecured creditor's lien as equal to the total amount of its claim for plan confirmation purposes.

No. NV-14-1375, 2015 Bankr. LEXIS 1680, at *10 (B.A.P. 9th Cir. May 18, 2015) (citing In re Weinstein, 227 B.R. 284, 294 (B.A.P. 9th Cir. 1998)).

14. When Congress enacted Subchapter V in 2020, it added several provisions to the Code that apply only to Subchapter V cases. One such provision is § 1190(3):

> A plan filed under this subchapter—notwithstanding section 1123(b)(5) of this title, may modify the rights of the holders of a claim secured only by a security interest in real property that is the principal residence of the debtor if the new value received in connection with the granting of the security interest was—(A) not used primarily to acquire the real property; and (B) [instead] used primarily in connection with the small business of the debtor.

15. Section 1190(3) provides an exception to the § 1123(b)(5) rule and allows Subchapter V plans to modify claims secured by the debtor's principal residence, if certain specific requirements are met. See 8 COLLIER ON BANKRUPTCY ¶ 1190.02.

6

16. While § 1190(3) gives individual Subchapter V debtors a unique opportunity to modify the liens of creditors secured by their primary residence, there is no evidence that it overrides or takes away the creditors' right to elect under § 1111(b). As explained by Collier, "[a]n undersecured creditor holding a residential mortgage that the debtor proposes to modify under section 1190(3) may, like any undersecured creditor, elect the application of section 1111(b) to have its entire claim treated under the plan as secured by its collateral." 8 COLLIER ON BANKRUPTCY ¶ 1190.02. In fact, when Congress enacted Subchapter V, it included § 1181(a), which identifies general Chapter 11 provisions that do not apply in Subchapter V cases. Notably, § 1111 is not included.

17. While the Court agrees with the Debtors that § 1190(3) is more specific and that the legislative intent behind Subchapter V was to protect small business owners, it finds § 1181(a) to be dispositive as to this issue. There is no evidence that Congress intended to omit creditors' rights under § 1111(b) from Subchapter V. It appears they intended § 1190(3) and § 1111(b) to co-exist just as § 1123 and § 1111 do (and had for 42 years before Subchapter V was enacted).

18. Moreover, the Court agrees with Pinnacle's observation that the Debtors may not be eligible to modify the Claim under § 1190(3), as the Judgment and loan documents filed with the Claim suggest that the Loan may be secured by more than just the Principal Residence.

19. Regardless, the Court finds that an § 1190(3) election–whether proper or not–does not override an § 1111(b) election.

7

## CONCLUSION

The Debtors' have failed to show that their § 1190(3) election overrides Pinnacle's right to elect to have the Claim treated as fully secured under § 1111(b). Accordingly, the Court finds that Pinnacle's Election is proper and **OVERRULES** the Debtors' Objection.

**SO ORDERED**.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |